1    WO

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9    Derek Don Chappell,                    No. CV-15-00478-PHX-SPL

10                        Petitioner,
                                            **ORDER**
11   v.

12   Charles L. Ryan, et al.,

13                        Respondents.

14

15         Before the Court is Petitioner Derek Don Chappell's Motion for Temporary Stay

16   and Abeyance and for Authorization to Appear in Ancillary State-Court Litigation. (Doc.

17   94.)  Chappell asks the Court to stay and hold his case in abeyance while he pursues state

18   court relief.  He also seeks permission for his federal habeas counsel to appear on his

19   behalf in state court.  Respondents filed a response opposing a stay and Chappell filed a

20   reply. (Docs. 95, 96.)  For the reasons set forth below, the motion is denied.

21   **I.    BACKGROUND**

22         A Maricopa County jury convicted Chappell of first degree murder and child

23   abuse and determined that he should be sentenced to death.  The following information

24   concerning the crimes is taken from the Arizona Supreme Court opinion affirming the

25   convictions and sentences. *State v. Chappell*, 225 Ariz. 229, 233–34, 236 P.3d 1176,

26   1180–81 (2010).

27         Chappell began dating Kristal Shackleford in the fall of 2003. They soon were

28   engaged to be married and Shackleford and her two-year-old son, Devon, moved in with

Chappell and his parents.

On December 10, 2003, Chappell was caring for Devon while Shackleford was at work. While changing Devon's diaper, Chappell forcefully pushed down on Devon's shoulders and neck until his face turned red. Chappell immediately contacted Shackleford, said he had "hurt Devon," and asked her to come home right away. A pediatrician examined Devon later that day and found bruising on his face and neck consistent with choking. A Child Protective Services ("CPS") investigation ensued, and CPS told Chappell he was to have no further contact with Devon. Shackleford and Devon moved out of the Chappell home and into a nearby apartment complex, but Chappell and Shackleford continued dating.

On March 11, 2004, Shackleford called 911 to report that Devon was missing. Police officers found Devon floating in the swimming pool at Shackleford's apartment complex. Devon was pronounced dead at a nearby hospital. An autopsy revealed that the cause of death was drowning. Chappell quickly became a suspect and ultimately confessed to the murder, both to the police and at a press conference he held from jail. Chappell admitted drowning Devon but claimed he was acting at Shackleford's direction.

Chappell was indicted on charges of child abuse for the 2003 choking incident and first degree murder, and was found guilty on both counts. During the aggravation phase of the trial, the jury found three aggravating circumstances: Chappell had a previous conviction for a serious offense (child abuse), A.R.S. § 13–751(F)(2); the murder was committed in an especially cruel manner, § 13–751(F)(6); and Chappell was an adult and the victim was under fifteen years of age at the time of the murder, § 13–751(F)(9). After the penalty phase, the jury determined that Chappell should be sentenced to death.

After unsuccessfully pursuing post-conviction relief, Chappell filed a petition for writ of habeas corpus in this Court. (Doc. 25.) Respondents filed an answer and Chappell filed a reply. (Docs. 33, 87.) Chappell's brief on evidentiary development, previously due January 23, 2017, is now due on March 9, 2017. (Doc. 99.) He filed the pending motion on December 20, 2016. (Doc. 94.)

1        Chappell now seeks a stay so that he can return to state court and present several

2    claims. In asserting that state court remedies remain, Chappell argues that *Hurst v.*

3    *Florida*, 136 S. Ct. 616 (2016), represents a significant change in the law, under Arizona

4    Rule of Criminal Procedure 32.1(g). He also contends that he can present evidence that

5    constitutes newly-discovered material facts under Arizona Rule of Criminal Procedure

6    32.1(e). Finally, Chappell argues that the new evidence demonstrates by clear and

7    convincing evidence that he would not have been found guilty or the court would not

8    have imposed the death penalty, under Arizona Rule of Criminal Procedure 32.1(h).

9    **II.    ANALYSIS**

10        Chappell's habeas petition is governed by the Antiterrorism and Effective Death

11    Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). Although AEDPA does not

12    deprive courts of the authority to stay habeas corpus petitions, it "does circumscribe their

13    discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court has

14    emphasized that the stay and abeyance of federal habeas petitions is available only in

15    limited circumstances. *Id.* at 277. "Staying a federal habeas petition frustrates AEDPA's

16    objective of encouraging finality by allowing a petitioner to delay the resolution of the

17    federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas

18    proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court

19    prior to filing his federal petition." *Id.*

20        A writ of habeas corpus may not be granted unless it appears that a petitioner has

21    exhausted all available state court remedies. 28 U .S.C. § 2254(b)(1); *see also Coleman v.*

22    *Thompson*, 501 U.S. 722, 731 (1991). In Arizona, there are two avenues for petitioners to

23    exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings

24    ("PCR"). Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings

25    and provides that a petitioner is precluded from relief on any claim that could have been

26    raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive

27    effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and

28    the petitioner can justify why the claim was omitted from a prior petition or not presented

1     in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

2         When a petitioner has an available remedy in state court that he has not

3 procedurally defaulted, it is appropriate for the federal court to stay the habeas

4 proceedings if (1) there was good cause for the petitioner's failure to exhaust his claims

5 first in state court, (2) his unexhausted claims are potentially meritorious, and (3) there is

6 no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines*, 544

7 U.S. at 277.

8         **A.**     **Rule 32.1(g)**

9         Chappell contends that under Rule 32.1(g), the United States Supreme Court's

10 recent decision in *Hurst* provides an available remedy in state court. Rule 32.1(g)

11 provides that a defendant may file a petition for post-conviction relief on the ground that

12 "[t]here has been a significant change in the law that if determined to apply to

13 defendant's case would probably overturn the defendant's conviction or sentence." Ariz.

14 R. Crim. P. 32.1(g).

15         Respondents contend, among other arguments, that a return to state court would be

16 futile because the claim does not satisfy Rule 32.1(g). (Doc. 95 at 7–10.) The Court

17 agrees.

18         Arizona courts have characterized a significant change in the law as a

19 "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009),

20 and a "clear break" or "sharp break" with the past. *State v. Slemmer,* 170 Ariz. 174, 182,

21 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court

22 overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A

23 statutory or constitutional amendment representing a definite break from prior law can

24 also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179; *see State v.*

25 *Werderman*, 237 Ariz. 342, 343, 350 P.3d 846, 847 (App. 2015).

26         *Hurst* did nothing to transform Arizona law. In *Hurst*, the Supreme Court held that

27 Florida's capital sentencing scheme violated *Ring*. 136 S. Ct. 616. Under the Florida

28 scheme, a jury renders an advisory verdict while the judge makes the ultimate factual

1    determinations necessary to sentence a defendant to death. *Id.* at 621–22. The Court held

2    that this procedure was invalid because it "does not require the jury to make the critical

3    findings necessary to impose the death penalty." *Id.* at 622. In reaching this decision, the

4    Supreme Court simply applied *Ring* to Florida's capital sentencing statutes.

5        *Hurst* does not hold, as Chappell suggests, that a jury is required to find beyond a

6    reasonable doubt that the aggravating factors outweigh the mitigating circumstances.

7    (Doc. 94 at 4–5.) *Hurst* held only that Florida's scheme, in which the jury rendered an

8    advisory sentence but the judge made the findings regarding aggravating and mitigating

9    factors, violated the Sixth Amendment. 136 S. Ct. at 620. *Hurst* did not address the

10   process of weighing the aggravating and mitigating circumstances. Indeed, the Supreme

11   Court has held that the sentencer may be given "unbridled discretion in determining

12   whether the death penalty should be imposed after it has found that the defendant is a

13   member of the class made eligible for that penalty." *Zant v. Stephens*, 462 U.S. 862, 875

14   (1983); *see Tuilaepa v. California*, 512 U.S. 967, 979–80 (1994). In *Zant*, the Court

15   explained that "specific standards for balancing aggravating against mitigating

16   circumstances are not constitutionally required." *Id.* at 875 n.13; *see Franklin v. Lynaugh*,

17   487 U.S. 164, 179 (1988) ("[W]e have never held that a specific method for balancing

18   mitigating and aggravating factors in a capital sentencing proceeding is constitutionally

19   required.").

20       In Arizona, in accordance with *Ring* and *Hurst*, the jury makes factual findings

21   regarding the aggravating and mitigating factors to determine the appropriate sentence.

22   *Hurst* did not effect a change in Arizona law for purposes of Rule 32.1(g).

23       Moreover, even if *Hurst* were a significant change in the law, it does not apply

24   retroactively. The Supreme Court has held that "*Ring* announced a new procedural rule

25   that does not apply retroactively to cases already final on direct review." *Schriro v.*

26   *Summerlin*, 542 U.S. 348, 358 (2004). *Hurst*, which applies *Ring* in Florida, is also

27   nonretroactive. This claim does meet the Rule 32.1(g) exception to preclusion. It would

28

1    be futile to stay these proceedings while Chappell raised a claim based on *Hurst* in state

2    court.

3         **B.      Rule 32.1(e) and (h)**

4         Under Rule 32.1(e), a claim is not precluded where "[n]ewly discovered material

5    facts probably exist and such facts probably would have changed the verdict or

6    sentence." Ariz. R. Crim. P. 32.1(e). Rule 32.1(h) provides an exception to preclusion

7    where "[t]he defendant demonstrates by clear and convincing evidence that the facts

8    underlying the claim would be sufficient to establish that no reasonable fact-finder

9    would have found defendant guilty of the underlying offense beyond a reasonable

10   doubt, or that the court would not have imposed the death penalty." Ariz. R. Crim. P.

11   32.1(h).

12        Chappell indicates that in state court he would offer several categories of newly

13   discovered evidence: (1) evidence that a juror saw Chappell shackled during his trial and

14   sentencing; (2) "expert reports on the causes and implications of petechial bruising"; (3)

15   reports from medical experts that Devon's fractured leg, diagnosed December 3, 2003,

16   was a "toddler's fracture" and the cause was most likely accidental; and (4) "evidence

17   supporting a diagnosis of frontal-lobe brain impairment." (Doc. 94 at 8−9.)

18        Respondents contend that claims based on this evidence do not satisfy Rule

19   32.1(e) or (h). They assert that Chappell has failed to demonstrate "why he could not

20   have presented this evidence previously in the Arizona courts if counsel had acted

21   diligently." (*See* Doc. 95 at 11.) They also argue that the evidence does not qualify as

22   "newly discovered material facts." (*Id.*) Finally, Respondents contend that the evidence

23   does not prove that that Chappell was "actually innocent." (*Id.*)

24        Chappell counters that determining whether his claims "meet[s] the requirements

25   of Rule 32.1 is a matter for the state court to determine." (Doc. 96 at 8.) The Court

26   disagrees. It is the role of the district court to determine if a petitioner presently has a

27   remedy available in state court. *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)

28   (finding it is district court's role to assess availability of state court remedy). In making

1    that decision, the court is required to "assess the likelihood that a state court will accord

2    the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d

3    966, 974 (9th Cir. 2001) (citing *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J.,

4    concurring)). The Court therefore will consider whether Chappell has a state court

5    remedy under Rule 32.1(e) or (h).

6    　　　　In order to raise a newly-discovered evidence claim, five requirements must be

7    met: (1) the evidence must appear on its face to have existed at the time of trial but be

8    discovered after trial; (2) the motion must allege facts from which the court could

9    conclude the defendant was diligent in discovering the facts and bringing them to the

10   court's attention; (3) the evidence must not simply be cumulative or impeaching; (4) the

11   evidence must be relevant to the case; (5) the evidence must be such that it would likely

12   have altered the verdict, finding, or sentence if known at the time of trial. *State v. Bilke*,

13   162 Ariz. 51, 52–53, 781 P.2d 28, 29–30 (1989); Ariz. R. Crim. P. 32.1(e). Based on

14   these criteria, Chappell has not presented newly discovered facts.

15   　　　　"Evidence is not newly discovered unless it was unknown to the trial court, the

16   defendant, or counsel at the time of trial and neither the defendant nor counsel could have

17   known about its existence by the exercise of due diligence." *State v. Saenz*, 197 Ariz.

18   487, 490, 4 P.3d 1030, 1033 (App. 2000). "Simply because defendant presents the court

19   with evidence for the first time does not mean that such evidence is 'newly discovered.'"

20   *State v. Mata*, 185 Ariz. 319, 333, 916 P.2d 1035, 1049 (1996).

21   　　　　All of Chappell's new evidence could have been known about at the time of trial

22   through the exercise of due diligence. Chappell does not argue otherwise. The possibility

23   that a juror saw Chappell shackled was considered during his trial. (*See* Doc. 94 at 7.)

24   Evidence of petechial bruising seen on the victim was presented during the guilt phase of

25   trial, and evidence of a leg fracture was presented at the penalty phase. (*Id.* at 6–7.)

26   Chappell does not argue that evidence about the causes and implications of petechial

27   bruising or the possibility of an accidental "toddler's fracture" could not have been

28   produced through due diligence. Finally, Chappell does not contend that his frontal lobe

- 7 -

1  brain-impairment could not have been discovered at trial through due diligence. In fact,

2  Chappell alleges in his habeas petition that counsel performed deficiently by failing to

3  discover the evidence. (Doc. 25 at 72–78.)

4       In addition, the evidence offered by Chappell is not sufficient to establish that no

5  reasonable fact-finder would have convicted him of Devon's murder or that the court

6  would not have imposed the death penalty. Ariz. R. Crim. P. 32.1(h). In light of

7  Chappell's confessions to the murder, a reasonable fact-finder would have found him

8  guilty even considering the new evidence. Moreover, Chappell's assertion that he has

9  been diagnosed with "frontal-lobe brain impairment" falls short of "clear and convincing

10  evidence" that a court would not have sentenced him to death.

11       Neither Rule 32.1(e) nor (h) provides a state court remedy for Chappell's claims.

12  Therefore, a stay of the proceedings would be futile.

13  **III.    APPOINTMENT OF COUNSEL**

14       Chappell asks the Court to authorize the Federal Public Defender's ("FPD") office

15  to represent him in state court. The Criminal Justice Act provides for appointed counsel

16  to represent their client in "other appropriate motions and procedures." 18 U.S.C. §

17  3599(e).

18       The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009),

19  holding that the statute "authorizes federally appointed counsel to represent their clients

20  in state clemency proceedings and entitles them to compensation for that representation."

21  *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of

22  counsel for habeas petitioners, and subsection (e) governs the scope of appointed

23  counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not

24  expected to provide each of the services enumerated in section (e) for every client.

25  Rather, "counsel's representation includes only those judicial proceedings transpiring

26  'subsequent' to her appointment." *Id.* at 188.

27       *Harbison* addressed the concern that under the Court's interpretation of § 3599,

28  federally appointed counsel would be required to represent their clients in state retrial or

1  state habeas proceedings that occur after counsel's appointment because such
2  proceedings are also "available post-conviction process." *Id.* The Court explained that §
3  3599(e) does not apply to those proceedings because they are not "properly understood as
4  a 'subsequent stage' of judicial proceedings but rather as the commencement of new
5  judicial proceedings." *Id.* at 189. As to state post-conviction proceedings, the Court
6  noted, "State habeas is not a stage 'subsequent' to federal habeas. . . . That state
7  postconviction litigation sometimes follows the initiation of federal habeas because a
8  petitioner has failed to exhaust does not change the order of proceedings contemplated by
9  the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v.*
10  *Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), *cert. denied sub*
11  *nom. Lugo v. Jones*, 135 S. Ct. 1171 (2015) (explaining "a state prisoner is not entitled, as
12  a matter of statutory right, to have federally paid counsel assist him in the pursuit and
13  exhaustion of his state postconviction remedies, including the filings of motions for state
14  collateral relief . . . "); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1274
15  (11th Cir. 2012) (explaining "§ 3599 does not provide for federally-funded counsel to
16  assist someone standing in Gary's shoes in pursuing a DNA motion, the results of which
17  might serve as the basis for an extraordinary motion for a new trial").

18        Nevertheless, this Court has the discretion to appoint federal counsel to represent
19  Chappell in state court. In *Harbison* the Supreme Court noted that "a district court may
20  determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a
21  claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

22        The Court has determined that Chappell is not entitled to a stay, either to exhaust a
23  claim based on *Hurst* or to raise a claim premised on new evidence. Based on that
24  determination, together with the *Harbison* Court's discussion of the parameters of §
25  3599(e), the Court finds it is not appropriate to authorize the FPD to represent Chappell
26  in state court.

27  **IV. CONCLUSION**
28        Chappell is not entitled to a stay. *Hurst* is not a significant change in the law for

1  purposes of Rule 32.1(g). The new evidence does not satisfy Rule 32.1(e) or (h). The

2  Court will exercise its discretion to deny the appointment of the FPD.

3      Accordingly,

4      **IT IS ORDERED** denying Chappell's Motion for Temporary Stay and Abeyance

5  and for Authorization to Appear in Ancillary State-Court Litigation. (Doc. 94.)

6      Dated this 1st day of February, 2017.

8  Honorable Steven P. Logan
   United States District Judge

- 10 -