**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Derek Don Chappell,<br>Petitioner,<br>v.<br>Ryan Thornell, et al.,<br>Respondents. | No. CV-15-00478-PHX-SPL<br>**ORDER**<br>DEATH PENALTY CASE |

Before the Court is Petitioner Derek Don Chappell's contested motion to alter or amend the Court's Judgment denying him a writ of habeas corpus (the writ). (Doc. 141.) The motion is fully briefed. (Docs. 144, 154, 157.) For the reasons below, the Court will deny the motion.

## I. RELEVANT FACTS

Between 2006 and 2007, Chappell stood trial for his alleged child-abuse and first-degree murder of a toddler. (R.O.A. 385–86.) A jury found him guilty as charged and sentenced him to death for the murder.[1] (R.O.A. 533.) On direct appeal, the Arizona Supreme Court affirmed (3/1/11 Mandate), and Chappell sought relief on state postconviction review (PCR) (Doc. 42-3, Ex. WWW).

[1] An Arizona capital trial has three contingent parts: the guilt phase, where a jury decides whether to convict the accused for first-degree murder, Arizona Revised Statutes (A.R.S.) § 13-703(D) (2007); the aggravation phase, where the jury decides whether there is an aggravating circumstance, making the accused eligible for a death sentence, A.R.S. § 13-703.01(C) (2007); and the penalty phase, where the jury weighs the aggravators and mitigators and decides whether to impose that sentence, A.R.S. § 13-703(E) (2007).

In his PCR petition, he claimed that at the trial's penalty phase, his counsel had rendered ineffective assistance by not amply investigating or presenting, as mitigation, evidence of his mental-health issues. (*Id*. at 21–36.) He also claimed that there was newly-discovered, neurological evidence of his brain damage that would have caused a sentence less than death, had it been offered at the penalty phase. (*Id*. at 36–38.) He did not allege that his counsel had rendered ineffective assistance by not offering it. (*Id*. at 21–38.) In its response, the State asked the PCR court to treat the new-evidence claim not only as raised by Chappell, but also as an ineffective-assistance-of-trial-counsel (IAC) claim. (Doc. 56-6, Ex. RRRR at 73.) Chappell, in his reply, backed the State's request and raised the brain-damage IAC claim for the first time. (Doc. 69-5, Ex. IIIII at 44–45.)

In Arizona, claims raised for the first time in a reply are waived. *State v. Lopez*, 221 P.3d 1052, 1053–54, ¶¶ 3–7 (Ariz. Ct. App. 2009). Consistent with this rule, the PCR court expressly considered only the claims raised in the PCR petition and then denied the merits of the petition's un-precluded claims. (Doc. 70-2, Ex. OOOOO at 1–3.) It considered the mental-health IAC and new-evidence claims, but not the brain-damage IAC claim, and denied the former two on the merits. (*Id*.) Chappell petitioned to have the Arizona Supreme Court review the denial of the mental-health IAC claim but did not raise the brain-damage IAC claim or cite any evidence of brain damage. (Doc. 72-3, Ex. HHHHHH.) The Arizona Supreme Court denied review. (Doc. 72-6, Ex. KKKKKK.)

In 2015, after he was denied relief in state court, Chappell noticed his intent to file a petition for the writ in this Court. (Doc. 1.) The Court issued an order to receive the state-court record from the state's Supreme Court and to "encourage the parties to file any additional parts of the state[-]court record that the parties believe[d were] relevant to resolving allegations" in the parties' briefs. (Doc. 6 at 5.) Later on, the Court received the record, and Chappell filed the writ petition. (Docs. 8 and 25.)

In Claim 2(A)(2) of the petition, he argued guilt-phase IAC based on counsel's alleged failure to investigate or present "expert medical evidence" to rebut the child-abuse evidence that Chappell had caused petechiae on the boy's neck by strangling him. (*Id*. at

79–84.) Claim 2(C)(1) raised the brain-damage IAC claim. (*Id*. at 93–105.) The parties agreed that Claims 2(A)(2) and (C)(1) had not been raised in state court and thus were procedurally defaulted in this Court. (*Id*. at 79, 93; Doc. 33 at 62, 93.) Chappell asked the Court to excuse the default, alleging that his prior PCR counsel had rendered ineffective assistance by not raising them. (Doc. 25 at 79, 93.)

In December 2023, after the parties briefed the petition and while the petition remained pending, Chappell returned to state court, noticed a new request for PCR relief, and disclosed the notice to this Court. (Doc. 127-1.) He also disclosed his intent to raise the petechiae and brain-damage IAC claims in the new PCR case. (Doc. 127 at 6.) In January 2024, he filed a PCR petition raising both those claims (Doc. 144 at 8–76) and arguing that his prior PCR counsel had rendered ineffective assistance by not raising them (*id*. at 76–83). By May 2024, Chappell had disclosed the reply in support of the 2024 PCR petition and a 2024 PCR-court stay order. (Doc. 134-1 at 2; Doc. 137-1 at 2–42.) He had not disclosed the petition itself.

The PCR court later lifted the stay, and in October 2024, denied the petition. (Doc. 144 at 86–96.) First, the court barred both IAC claims under *State v. Spreitz*, 39 P.3d 525, 526, ¶ 4 (Ariz. 2002), and *Stewart v. Smith*, 46 P.3d 1067, 1071, ¶ 12 (Ariz. 2002). In *Spreitz*, the Arizona Supreme Court noted that under then-Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure, IAC claims are "waived and precluded" on successive PCR when they "could have" been, but were not, raised in a prior PCR petition. 39 P.3d at 526, ¶ 4 (citing *State v. Conner*, 786 P.2d 948, 951 (Ariz. 1990)). The rule's drafters commented that under Rule 32.2(a)(3), certain claims could be "deemed waived without considering the defendant's personal knowledge, unless such knowledge [was] specifically required to waive the constitutional right involved." Ariz. R. Crim. P. 32.2 cmt. to 1995 amend.

In *Smith*, the Arizona Supreme Court noted that Rule 32.2(a)(3)'s waiver exception did not apply to IAC claims raised for the first time in a successive PCR, when an IAC claim was raised in a prior PCR. *See Smith*, 46 P.3d at 1071, ¶ 12. The Arizona Court of Appeals enforced this *per se* bar in *State v. Traverso*, 537 P.3d 345, 347–49, ¶¶ 9–13 (Ariz.

Ct. App. 2023), *vacated in part by* 576 P.3d 97 (2025), and the PCR court applied the bar to Chappell's petechiae and brain-damage IAC claims (Doc. 144 at 86–96). Afterward, Traverso filed a petition for review (PFR) to the Arizona Supreme Court. *Traverso*, 576 P.3d at 102, ¶ 18.

The pending PFR in *Traverso* did not persuade the PCR court to not bar Chappell's petechiae or brain-damage IAC claims. (*Id*. at 94.) The court found it "entirely speculative" that the petition for review's outcome in *Traverso* would favor Chappell. (*Id*.) It further found that if the Arizona Supreme Court granted review and removed the *per se* bar, Rule 32.2(a)(3) still barred both claims. (*Id*.)

The court also denied the merits of the petechiae IAC claim. (*Id*. at 91.) But under Rule 32.2(a)(2), it did not reach the merits of the brain-damage IAC claim. (*Id*. at 95–96.) Rule 32.2(a)(2) bars claims previously and "finally adjudicated on the merits." Ariz. R. Crim. P. 32.2(a)(2). The court found that on prior PCR, the brain-damage IAC claim's "factual basis" was resolved "on the merits"—either through the denial of the mental-health IAC, or the new-evidence, claims. (Doc. 144 at 91.) Last, the court rejected the PCR-counsel claim, as Chappell had no right to such counsel. (*Id*. at 94–96.) Chappell petitioned to have the Arizona Supreme Court review the denial of the petechiae and brain-damage IAC claims. (*Id*., Ex. D.)

While Chappell's PFR and writ petition remained pending, the Arizona Supreme Court granted Traverso's PFR and abolished the *per se* bar. 576 P.3d 97, 102–04, ¶¶ 20–30 (Ariz. 2025). This Court later issued its Order and Judgment, denying the writ. (Docs. 141–42.) In doing so, it denied Claims 2(A)(2) and (C)(1) as procedurally defaulted. (Doc. 141 at 51, 68–69.) The Court based the default on the parties' agreement to that effect and the state-court record in its possession (*id*.), which did not include the 2024 PCR petition, ruling, or PFR. The Court also denied Chappell's request to excuse the default of both Claims. (*Id*. at 51–53, 69–70.)

The Court declined to excuse Claim 2(C)(1)'s default because prior PCR counsel did not render ineffective assistance in not raising it on prior PCR. (*Id*. at 69–71.) The Court

explained that Claim 2(C)(1) lacked merit. (*Id.*) It assumed that trial counsel "should have further investigated Chappell's potential brain damage" but found that counsel's failure to do so did not prejudice Chappell. (*Id.*) The "trial evidence," said the Court, "show[ed] that Chappell did not" commit the murder "impulsively"; it was "preplanned, strategic, deliberate, and ultimately premeditated." (*Id.* at 69–70.) For that reason, the Court found that brain-damage evidence would have received "minimal mitigating weight" and that there was no "reasonable probability" Chappell would not have been sentenced to death, especially in light of the aggravators. (*Id.*)

Regarding the denial of Claims 2(A)(2) and (C)(1), Chappell moved to alter or amend the Judgment. (Doc. 143.) With the motion, and for the first time to this Court, he disclosed the 2024 PCR petition, ruling, and PFR. (Doc. 144.) He also appealed the Judgment to the United States Court of Appeals for the Ninth Circuit. (Doc. 145.) The Ninth Circuit stayed the appeal, pending the motion's outcome. (Doc. 147.) The 2024 PFR has since been denied, *see* Active Cases, *State v. Chappell*, CR-24-0313-PC, https://apps.azcourts.gov/aacc/appella/ASC/CR/CR240313.PDF (last visited June 9, 2026), and the motion to alter or amend has since been fully briefed (Docs. 154 and 157).

## II. Standard for Altering or Amending a Judgment

Federal Rule of Civil Procedure Rule 59(e) lets a habeas petitioner move to "alter or amend a judgment." *Banister v. Davis*, 590 U.S. 504, 507 (2020). The rule does not list "specific grounds" to alter or amend, and so the Court has "considerable discretion" in deciding the motion. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotations omitted).

That said, Rule 59(e) offers an "'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kona Enter., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § § 59.30[4] (3d ed. 2000)). Thus the motion should be granted only in "highly unusual circumstances," *id.*—for instance, when (1) the judgment is "manifestly unjust" or has "manifest errors of law or fact," (2) the court receives "newly discovered or

previously unavailable evidence," or (3) "there is an intervening change in the controlling law," *Rishor v. Ferguson*, 822 F.3d 482, 491–92 (9th Cir. 2016).

## III. ANALYSIS

Chappell asserts that the Court's denial of Claims 2(A)(2) and (C)(1) should be altered or amended, mainly in light of the 2024 PCR petition, ruling, and PFR. (Doc. 143.) At the outset of this litigation, the Court "encourag[ed]" Chappell and Respondents to supplement the record with items "relevant" to their briefs. (Doc. 6 at 5.) The 2024 PCR petition, ruling, and PFR were relevant to Claims 2(A)(2) and (C)(1) because both claims were raised, denied, and reraised in those filings (Doc. 144), and under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Chappell could not receive the writ unless they were unreasonably denied in state court, 28 U.S.C. § 2254(d).

Yet he did not disclose the 2024 PCR petition, ruling, or PFR until he moved to alter or amend (Doc. 144), even though he had disclosed three other 2024 PCR filings pre-Judgment (Doc. 127-1; Doc. 134-1 at 2; Doc. 137-1 at 2–42). Nor did he explain why he did not disclose them earlier. Thus, he arguably failed his duty to disclose, and the Court could arguably deny the motion on that basis. *See* 28 U.S.C. § 2254(d); *see also id.* at (e)(2)(A)(ii) (barring an evidentiary hearing for a habeas petitioner who does not "develop the factual basis of a claim" in state court, unless the petitioner "shows that . . . a factual predicate that could not have been previously discovered" with "due diligence"). But in furtherance of AEDPA's goals of comity and federalism, *Williams v. Taylor*, 529 U.S. 420, 436 (2000), the Court will not ignore the newly disclosed filings.

As mentioned, the writ will not be issued "with respect to any claim that was" denied on the merits in state court unless the denial was unreasonable. *See* 28 U.S.C. § 2254(d). In reviewing the reasonableness of the denial, this Court reviews the state court's "last-reasoned decision." *McKinney v. Ryan*, 813 F.3d 798, 811 (9th Cir. 2015) (internal quotation omitted). Under *Ylst v. Nunnemaker*, this Court presumes that when a "reasoned state" judgment denies a claim, a "later unexplained" order upholding the judgment or denying the same claim "rests" on the prior judgment's reasons. 501 U.S. 797, 803 (1991);

*see Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (same). Chappell argues that under *Wilson* and *Ylst*, the 2024 PCR ruling is the last-reasoned state decision on—and "contradicts" this Court's assessment and denial of—Claims 2(A)(2) and (C)(1). (Doc. 143 at 6–13.) The Court agrees with Chappell on the former but disagrees with him on the latter.

**A. Claim 2(A)(2)**

Chappell argues that the 2024 PCR ruling contradicts the finding of Claim 2(A)(2)'s procedural default and therefore the *per se* bar no longer applies to the Claim, as the bar has since been abolished. (*Id*. at 11–12.) Therefore, he asserts, this Court should vacate the Claim's procedural default, find the PCR court's denial of the Claim's merits unreasonable, and grant the writ. (*Id*.; Doc. 141 at 136–40.) The Court will not do so.

First, the Court will not reverse the PCR court's application of the *per se* bar to the petechiae IAC claim. Federal courts cannot consider, let alone overturn, a state court's decision on state law, *Estelle v.* McGuire, 502 U.S. 62, 67–68 (1991), and the writ does not otherwise "lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see Rhoades v. Henry*, 638 F.3d 1027, 1053 (9th Cir. 2011) (citing *Estelle*, 502 U.S. at 67–68) (noting that "state-law issues" are un-cognizable in "federal habeas" cases); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)) ("When a [PCR petition] is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

Second, Chappell does not contest that the 2024 PCR ruling also barred Claim 2(A)(2) under Rule 32.2(a)(3) or that the Rule 32.2(a)(3) bar of the Claim in state court renders the claim procedurally defaulted in this Court. This Court, in fact, did not rely on the *per se* bar in procedurally defaulting Claim 2(A)(2). Toward the start of this Court's Order denying the writ, the Court set forth the Rule 32.2(a)(3), not the *per se*, bar. As the Court said, a habeas claim is procedurally defaulted, for instance, if it "was never" raised—and would now be "'procedurally barred'"—in state court. (Doc. 141 at 4, quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Before the new PCR commenced, the parties agreed that this form of procedural default applied to Claim 2(A)(2). (Doc. 25

at 79; Doc. 33 at 62.) Neither party cited the *per se* bar. Nor did the Court, in finding Claim 2(A)(2) procedurally defaulted. Rather, it generally found, based on the parties' agreement and the state-court record, that Claim 2(A)(2) had not been raised, and would now be barred, in state court. (Doc. 141 at 48–49, 51.)

Thereafter, consistent with this Court's finding of technical exhaustion and procedural default of Claim 2(A)(2), the 2024 PCR ruling barred the Claim under Rule 32.2(a)(3), as well as the now-defunct *per se* bar. In sum, the 2024 PCR ruling confirmed—not contradicted—the procedural default of Claim 2(A)(2). *See Wessingger v. Vannoy*, No. 04-637-JWD-EWD, 2022 WL 17824426, at *13 (M.D. La. Dec. 20, 2022) (denying motion to alter or amend, in part, because the district court's "ultimate conclusion"—that the claim was procedurally defaulted—was correct, even though the claim was originally found technically exhausted but procedurally defaulted but was then found procedurally defaulted as expressly precluded in state court).

To be sure, the denial of Claim 2(A)(2)'s merits in state court did not annul its procedural default in this Court. (Doc. 143 at 11.) So long as a state court clearly bars a claim on an adequate and independent state procedural ground, the claim will be procedurally defaulted on habeas review, even if the state court also denied the claim's merits. *Harris v. Reed*, 489 U.S. 255, 263 n.10 (1989); *Towery v. Schriro*, 641 F.3d 300, 312 n.3 (9th Cir. 2010). Here, the PCR court denied Claim 2(A)(2)'s merits. (Doc. 144 at 91.) But it also explicitly barred it under Rule 32.2(a)(3). (*Id.* at 94.) Chappell has not shown that Rule 32.2(a)(3) was not an adequate or independent state procedural ground. (Doc. 141 at 5, noting that the rule has been found adequate and independent.) And the Arizona Supreme Court has denied review of the 2024 PCR ruling. https://apps.azcourts.gov/aacc/appella/ASC/CR/CR240313.PDF. In short, as to Claim 2(A)(2)'s procedural default, the 2024 PCR ruling does not contradict the Judgment.

**B. Claim 2(C)(1)**

Chappell contests Claim 2(C)(1)'s procedural default, arguing that the Court erred in finding that on prior PCR, the Claim was not raised in Chappell's PFR. (Doc. 143 at 8–

9.) As said in the Judgment, proper exhaustion occurs when the petitioner "'fairly present[s]'" his habeas claims in state court, by describing their "operative facts" and "federal legal theor[ies]," to the "state's highest court, in a procedurally" apt way. (Doc. 141 at 3, quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).) Failure to do so procedurally defaults the claim in this Court. *See O'Sullivan*, 526 U.S. at 848; *e.g.*, *Gastelum-Garcia v. Arizona*, No. CV 22-01293 PHX SPL (CDB), 2023 WL 8190275, at *14 (D. Ariz. Oct. 30, 2023) (procedurally defaulting claim raised in the state's PCR, but not its highest, court).

On prior PCR, Chappell raised the mental-health—not the brain-damage—IAC claim in his PFR. (Doc. 72-3, Ex. HHHHHH.) He did not present any pertinent fact in support of the brain-damage IAC claim; nor did he reference brain damage, neurological evidence, or any related expert. Hence, he did not fairly present Claim 2(C)(1) to Arizona's highest court. Claim 2(C)(1)'s procedural default on that ground is correct.

Chappell also maintains that the 2024 PCR ruling contradicts Claim 2(C)(1)'s procedural default because the PCR court barred the Claim under Rules 32.2(a)(2) *and* (3). (Doc. 143 at 9–10.) The Ninth Circuit has given guidance on such an issue. For instance, in *Lambright v. Stewart*, it reversed a district court's finding of a claim's procedural default under Rule 32.2 for failure to first raise an IAC claim on direct appeal. 241 F.3d 1201, 1203–05 (9th Cir. 2001). Assuming that the appeal rule "clearly existed," it found that the state court's denial of the IAC claim did "not 'clearly and expressly' rest on such a rule." *Id*. at 1205. It explained that because the Arizona Supreme Court had thoroughly assessed the constitutionality of the whole "sentencing process," the PCR court found a "suggestion, and strong inference," that the IAC claim was barred under Rule 32.2(a)(2) *Id*. The PCR court also found the claim "precluded" as waived on "direct appeal." *Id*.

The Ninth Circuit found the two "possibilities" "contradictory" and that by "invoking two contradictory arguments, the state court" did not "clear[ly]" default the claim. *Id*. at 1202 and 1205. Thus, the Ninth Circuit held that the claim's dismissal in federal court did not rest on an "adequate state ground" and that the claim was not barred

in federal court. *Id*. at 1202 and 1206.

The Ninth Circuit held the same in *Koener v. Grigas*, 328 F.3d 1039 (9th Cir. 2003). Again, it found that a state court had not applied an "adequate state ground" in barring a claim, this time on grounds congruent to Rule 32.2(a)(2) and (3). *Koener*, 328 F.3d at 1042 and 1053. The circuit court explained that the grounds are "mutually inconsistent": either a claim has, or has not been, previously raised. *Id*. at 1053 (emphasis removed). And when "either ground is a possibility," the Ninth Circuit said, the "choice between them is wholly arbitrary," and it is not a federal court's role to choose between either one. *Id*. at 1053. Thus, the Ninth Circuit did not find the claim "procedurally barred." *Id*.

With *Koerner* and *Lambright* in mind, this Court turns to the status of Claim 2(C)(1)'s procedural default, in light of the 2024 PCR ruling.

The PCR court barred the Claim under Rules 32.2(a)(2) and (3). But a closer look reveals an instance where the enforcement of Rule 32.2(a)(2) did not conflict with the use of Rule 32.2(a)(3). The PCR court explicitly barred the Claim under Rule 32.2(a)(3), as waived on prior PCR. (Doc. 144 at 94.) It did not then examine whether trial counsel had performed deficiently or had prejudiced Chappell by not offering the brain-damage evidence—the two contingent elements of IAC. *Strickland v. Washington*, 466 U.S. 668 (1984). Rather, it found that Claim 2(C)(1)'s "factual basis" had been previously resolved on the merits. (Doc. 144 at 91.) It further found that this prior resolution occurred through the prior merits denial of either the mental-health IAC or the new-evidence claim. (*Id.*)

That is, in fact, what occurred. On prior PCR, the PCR court omitted the brain-damage IAC claim from its list of claims that it would consider. (Doc. 70-2, Ex. OOOOO at 1–3.) The court did analyze the mental-health IAC, and the new-evidence, claims. At least in assessing the new-evidence claim, the PCR court found that such evidence would not have caused a sentence less than death. (*Id.*; Doc. 56-6, Ex. RRRR at 70–73.) Because the impact of the brain-damage evidence had been reviewed on prior PCR, the PCR court in Chappell's case barred a second review of the brain-damage evidence's impact (presumably with regards to the prejudice element of an IAC claim). As a result, the court

barred Claim 2(C)(1) under Rule 32.2(a)(2).

In sum, unlike in *Koerner* and *Lambright*, the PCR court did not find that Claim 2(C)(1) had been previously raised but, at the same time, had been waived. The court simply refused to reassess the neurological evidence of brain damage because the evidence had previously been assessed in consideration of a prior, distinct claim's merits. *See*, *e.g.*, *Robinson v. Director of CDCR*, No. CV 16–4229 FMO (MRW), 2017 WL 2590149, at *2 (C.D. Cal. Apr. 27, 2017) (citing *Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009)) (finding "[r]esolution of the underlying claims of constitutional error under [the Antiterrorism and Effective Death Penalty Act of 1996]" is "dispositive of the derivative IAC claim"). The bar of Claim 2(C)(1) under Rule 32.2(a)(2) did not contradict the Claim's bar under Rule 32.2(a)(3).

To be sure, the Court will not assess whether PCR courts may even apply Rule 32.2(a)(2) under the circumstances of Claim 2(C)(1). *See Estelle*, 502 U.S. at 67–68. It only finds that the grounds for barring the brain-damage IAC claim did not conflict with each other, and the 2024 PCR ruling confirmed—not contradicted—Claim 2(C)(1)'s procedural default. *See Wessingger*, 2022 WL 17824426, at *13; https://apps.azcourts.gov/aacc/appella/ASC/CR/CR240313.PDF (denying review of the 2024 PCR ruling).

Even if there was a conflict between Rule 32.2(a)(2) and Rule 32.2(a)(3) in barring the brain-damage IAC claim, the 2024 PCR ruling would not warrant an alteration or amendment to the Judgment. In finding Claim 2(C)(1)'s procedural default unexcused, the Court reviewed Claim 2(C)(1)'s merits *de novo*, the Court found that trial counsel's assumed failure to present the neurological evidence of Chappell's brain damage as a mitigator did not prejudice Chappel.[2] (*See* Doc. 141 at 69–70.) Chappell does not challenge that analysis or finding. The procedural default of Claim 2(C)(1), at bottom, did not

[2] Because the Court reviewed Claim 2(C)(1) *de novo*, the Court rejects as moot Chappell's complaint that the Court did not assess whether the prior denial of the new-evidence claim was reasonable under AEDPA, 28 U.S.C. § 2254(d). (Doc. 143 at 130.) For *de novo* review is a "more favorable standard" than § 2254(d). *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

contradict the 2024 PCR ruling, and this Court did not otherwise deny Chappell a *de novo* merits review of Claim 2(C)(1).[3] (Doc. 143 at 13.)

**C. Conclusion**

Because Chappell has not shown that the 2024 PCR ruling contradicts this Court's denial of Claims 2(A)(2) or (C)(1) or that there is any "highly unusual circumstance[]" to alter or amend the Judgment, *see Kona Enter., Inc.*, 229 F.3d at 890,

**IT IS ORDERED denying** Chappell's Motion to Alter or Amend (Doc. 143).

Dated this 18th day of August, 2026.

Honorable Steven P. Logan
United States District Judge

---

[3] For the reasons above, the Court also rejects Chappell's argument that the Court erred in denying his motion to stay this case while he raised Claims 2(A)(2) and (C)(1) in state court. (Doc. 143 at 12–13.)